[No. 30562. Department Two. January 27, 1949.]

GEORGE E. MILLER, *Appellant*, v. RUTH A. MILLER, *et al., Respondents.*[1]

[1]Reported in 202 P. (2d) 277.

*C. Orno Shoemaker* (*Cox, Ware & Stellmon,* of counsel), for appellant.

*McCabe & McCabe,* for respondents.

SIMPSON, J.—Plaintiff instituted this action against a large number of known and unknown defendants to quiet title to certain real property situated in Garfield county. The complaint contained, among others, the following allegation:

"That plaintiff is the sole owner in fee simple absolute and as his sole and separate property and in possession and entitled to possession and together with his predecessors in interest has been in the undisputed, open, notorious, adverse and exclusive possession . . ."

The defendants Bottorff filed an answer and cross-complaint containing the statement:

"That prior to the 25th day of March, 1947, one Ruth A. Miller was in possession of the real estate hereinafter described, and was the owner of record thereof by mesne conveyance from the plaintiff."

Further, that defendants purchased the real estate for twenty-five hundred dollars cash, the sale having been consummated on April 9, 1947.

The reply stated that the plaintiff

". . . denies every affirmative thing, matter or fact set out and alleged therein, and the whole thereof, and referring particularly to said defendant's affirmative defense and cross-complaint, expressly denies each and every allegation contained in said affirmative defense and cross-complaint, and the whole thereof."

The court made findings of fact and conclusions of law and, based thereon, entered its decree quieting title in defendants Bottorff. Defendant Ruth A. Miller did not appear.

Plaintiff's assignments of error properly call in question all of the findings and conclusions of law and decree made and entered by the trial court.

Unfortunately for him, appellant had two wives. He was divorced from his first wife, Ruth A. Miller, in 1944,

and thereafter married Nettie Coordes Miller, from whom he was divorced in 1946.

Appellant purchased the property in question February 11, 1946, and on July 26, 1946, by warranty deed, conveyed it to Ruth A. Miller. The deed was under seal, and the stated consideration was one dollar. March 26, 1947, for a named consideration of twenty-five hundred dollars, Ruth A. Miller deeded the property to Ray E. Bottorff.

We shall refer to Ray E. Bottorff as though he were the only respondent.

The evidence presented to the trial court had to do with many conversations between the appellant and Ruth A. Miller. We summarize only that portion which, it is claimed, has a direct bearing upon the issues presented here.

In June, 1946, appellant filed an action for divorce against his wife Nettie. The complaint and summons were not served upon her, and in July of the same year Nettie started her divorce action in Yakima county. During the time mentioned, a neighbor of appellant saw Ruth, who said: "I would like to see him [appellant]." The neighbor conveyed the statement to appellant, who then met his former wife. They decided to become reconciled and re-marry after appellant should receive a divorce from his wife Nettie.

Concerning the deed to Ruth, appellant testified:

"Well, we planned on getting married again and so she wanted me to deed my property to her. Well, I told her that I didn't think I should do that. Well, she said: 'I know the law'; and she said: 'You can deed your property to me and it will be all right.' Well, I says: 'If we enter into any kind of an agreement like that,' I says, 'at the time we are married you will deed me back my property and we will pay for yours'—she had a home in town,—and I said 'We will pay for yours, and you will have your property and I will have mine.'"

July 29th, he went to North Dakota. While he was there, Ruth wrote to him stating that respondent desired to buy the property. He answered that he would sell it for thirty-five hundred dollars. Ruth lived on the property after ap-

pellant went to North Dakota. In November, respondent talked to appellant and Ruth about purchasing the real estate and was quoted a price of thirty-five hundred dollars. Appellant and Ruth made a trip to Arizona, from which state Ruth returned alone and then lived on the property. March 17, 1947, she called respondent by telephone and agreed to sell the property to him for twenty-five hundred dollars. Respondent accepted the offer and made an earnest payment of one hundred fifty dollars. Appellant, who had been in Arlington, Oregon, was called and returned to see respondent.

The evidence concerning the conversation between the parties is very much in dispute. Appellant testified that he told respondent he owned the property. Respondent Ray E. Bottorff testified:

"Q. And you say that George Miller told you that he had no claim to the property? A. He admitted to me—I said: 'You certainly have no claim on that property,' and he said: 'That's right.' Q. Did you ever find out why he contacted you at all? A. He had considerable garage equipment down there. Q. Is that what you discussed that night in that conversation? A. No, we never got to that. He told me that he knew that, and away he went. Q. He said 'I have no interest in that property,' and then he flew off and left. A. He left me near his place. Q. 'You have no interest in this property'; is that what you said? A. I said: 'You certainly have no interest in that property,' and he said: 'I know I haven't.' And then he got mad and drove off."

Conversations with other people were testified to, in each of which it appeared that appellant admitted he had no interest in the real estate. His contention is that there was no consideration given to him when he deeded his property to his former wife, Ruth; that Ruth held the property as trustee; and that respondent was not an innocent purchaser. The evidence relating to whether respondent was an innocent purchaser was in conflict. Our study of that evidence discloses that the trial court, being in a more advantageous position than this court, did not commit error in deciding that respondent was an innocent purchaser. See *Crawford v. Timm*, 85 Wash. 568, 148 Pac. 886.

It appears in *Erfurth v. Erfurth*, 90 Wash. 521, 156 Pac. 523, that the husband conveyed to his wife, by ordinary quitclaim deed, certain real estate. He later filed of record a claim of community interest, whereupon his wife sued to remove the cloud cast upon her title by the filing of the claim. In his answer, defendant admitted the execution of the deed, and then sought to annul it by alleging that, with the design to defraud him, the plaintiff had stated that if he would make the deed to her, she would make a will devising the premises to him; that, as an inducement, she represented that the deed would not become operative until his death. She made the will, but thereafter repudiated it, and then refused to live with him. Defendant introduced evidence tending to support the allegations to which we have referred in all particulars except the revocation of the will. The court sustained a challenge to defendant's evidence and found that the property in question was the separate property of the plaintiff. In deciding the question presented, this court held:

"It is next claimed that the court erred in sustaining respondent's challenge to the sufficiency of appellant's evidence. The cross-complaint, as we have seen, alleged, in substance, that the consideration for the deed was that respondent would hold the premises as a home for the parties and would make a will devising the property to appellant. We shall assume that the evidence, which was admitted over the respondent's objection, was sufficient to establish these claims. It was, however, inadmissible as against the express terms of the deed, which was absolute on its face. While it is competent to prove an additional or different consideration from that mentioned in a deed, this can never be done where the consideration which it is sought to prove would change or defeat the legal operation of the grant. The consideration here asserted would engraft upon the deed, absolute on its face, a reservation or limitation upon the estate granted through an oral agreement contradictory of, and at total variance with, the language of the written instrument."

*Findley v. Findley*, 193 Wash. 41, 74 P. (2d) 490, is another case which is decisive of the issue here presented. The facts in that case show that a deed executed by Herbert

S. Findley and Anna E. Findley was delivered to Clarence Findley. The deed was not recorded, and the instrument was not produced at the trial. In deciding that the deed could not be voided, we said:

"Herbert and Anna did not own the property. They had made the deed to Clarence, and the deed had been delivered to him."

■ The quotations from the following cases indicate the rule which must be adhered to in cases of this nature:

"It is an invariable rule that a valid deed, if once delivered, cannot be defeated by any subsequent act unless it be by virtue of some condition contained in the deed itself." *Jobse v. United States Nat. Bank,* 142 Ore. 692, 21 P. (2d) 221.

"The fact that the deceased grantor made certain attempts to sell the granted property after the execution and delivery of the deed is immaterial. The court found that there was a delivery and no act of the deceased subsequent to such delivery could destroy its effect." *Arias v. Springer,* 42 N. M. 350, 78 P. (2d) 153.

■ Appellant takes the position that the evidence indicated fraud on the part of Ruth A. Miller. He admits that he did not allege fraud, but contends that it is present because the proof amended the complaint. He makes this argument in an endeavor to secure from this court a judgment allowing him to recover the sum of two thousand dollars held by an attorney for Ruth as part of the purchase price of the property.

This was an action to quiet title in which fraud was not alleged. Summons and complaint were served upon Ruth A. Miller, and she defaulted. Clearly, no amendment by court order or evidence could enlarge the prayer of the complaint as against her. *Bank of California v. Dyer,* 14 Wash. 279, 44 Pac. 534; *Anderson v. Burgoyne,* 60 Wash. 511, 111 Pac. 777; *Bates v. Glaser,* 130 Wash. 328, 227 Pac. 15; *Riddell v. David,* 173 Wash. 370, 23 P. (2d) 22; *Ermey v. Ermey,* 18 Wn. (2d) 544, 139 P. (2d) 1016.

We hold that appellant, having parted with title to his real estate by executing and delivering a deed of that prop-

erty to Ruth A. Miller, cannot now question his action, especially in view of the fact that Ruth A. Miller sold the property to an innocent buyer, the respondent. This conclusion makes it unnecessary to discuss other objections urged as against Mrs. Miller.

The judgment is affirmed.

MALLERY, ROBINSON, and SCHWELLENBACH, JJ., concur.

